IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRET S. MERRICK,**

    **Plaintiff,**

    v.

                                Civil Action 2:21-cv-4803
                                Judge Edmund A. Sargus, Jr.
                                Magistrate Judge Elizabeth P. Deavers

**WARDEN NOBLE CORRECTIONAL
INSTITUTION,** *et al.*,

    **Defendants.**

## REPORT AND RECOMMENDATION

This matter is before the Undersigned for an initial screen of Plaintiff's Amended Complaint, ECF No. 12, under 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's Amended Complaint, or any portion of it which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Having performed the initial screen of the Amended Complaint, for the reasons that follow, it is **RECOMMENDED** that Plaintiff be **PERMITTED** to pursue claims against Defendants Dr. Tina Capers and Mrs. Wiley, but that the remainder of Plaintiffs' claims be **DISMISSED** in their entirety.

I.

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from

filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
>    \*     \*     \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd.*, *P'Ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

---

[1] Formerly 28 U.S.C. § 1915(d).

2

of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II.

Plaintiff, proceeding without the assistance of counsel, filed this action on September 24, 2021. (ECF No. 1.) After granting Plaintiff leave to proceed *in forma pauperis*, the Undersigned performed an initial screen under 28 U.S.C. § 1915(e)(2) and recommended dismissal of Plaintiff's Complaint for four reasons: (1) failure to specifically reference or identify any of the Defendants in his allegations; (2) failure to properly allege that Defendants acted with deliberate indifference towards his serious medical needs; (3) failure to seek appropriate relief; and (4)

mootness of Plaintiff's injunctive relief claim following his transfer from Noble Correctional Institution ("NCI") to Chillicothe Correctional Institution ("CCI"). (*See* ECF No. 6 (the "Initial Screen").) Plaintiff then timely filed objections to the Initial Screen, so the Undersigned withdrew the Initial Screen and directed Plaintiff to file an Amended Complaint. (ECF No. 11.) Plaintiff timely filed the Amended Complaint on January 2, 2024. (ECF No. 12.)

In the Amended Complaint, Plaintiff again asserts a medical deliberate indifference claim, the factual background for which the Undersigned set forth in the Initial Screen. (ECF No. 6.)[1] Now, however, Plaintiff names seven (7) Defendants: (1) the Warden of NCI, Jay Forshey; (2) Dr. Tina Capers; (3) "Dr. Eddy"; (4) the Office of Correctional Health Care ("CHC"); (5) a Corrections Officer named Mrs. Wiley; (6) NCI; and (7) the Ohio Department of Rehabilitation and Corrections (the "ODRC"). (*See* ECF No. 12.) Unlike Plaintiff's original Complaint (as the Undersigned noted in the Initial Screen), Plaintiff's Amended Complaint contains allegations against each of these Defendants. (*See generally id.*) Thus, Plaintiff has arguably cured the first deficiency the Undersigned identified in the Initial Screen. (*See* ECF No. 6 at PAGEID # 69.)

Merely having allegations, however, does not necessarily mean that Plaintiff's Amended Complaint will survive screening. For this, and to see if Plaintiff has cured the second deficiency identified in the Initial Screen (i.e., properly alleging that Defendants acted with deliberate indifference towards his serious medical needs), the Undersigned must evaluate the sufficiency of Plaintiff's allegations against each Defendant. And upon further review, for the following

---

[1] The Undersigned incorporates the factual background set forth in the Initial Screen as if fully set forth herein. (*See* ECF No. 6 at PAGEID ## 67-68.)

reasons, the Undersigned finds that Plaintiff has only stated potentially viable claims against two Defendants: Dr. Tina Capers and the Corrections Officer, Mrs. Wiley.

**A.     Dr. Tina Capers.**

The primary target of Plaintiff's allegations appears to be Dr. Tina Capers, the "medical professional whom [*sic*] was responsible for treating [Plaintiff's] condition." (ECF No. 12 at PAGEID # 114.) According to the Amended Complaint,[2] Dr. Capers was aware of Plaintiff's difficulty swallowing food without choking or vomiting, but "refuse[d] to listen to the details and concerns of Plaintiff's issues," and ultimately refused to treat Plaintiff's (then-undiagnosed) Achalasia because it "would cost too much." (*Id.* (citing ECF No. 1-1 at PAGEID ## 21-22).)

Plaintiff also alleges that after filing the subject lawsuit, he had a follow-up appointment with Dr. Capers, and that upon learning that Plaintiff had named her as a Defendant, "as a form of retaliation, Dr. Capers ordered [Plaintiff] to get put into medical isolation, confined to a cell separated from the rest of the population without freedom of movement for nearly a week." (*Id.* at PAGEID # 115.) Plaintiff further alleges that with these actions, "Dr. Capers acted within [her] individual capacity by making decisions about [Plaintiff's] medical care outside of her official capacity." (*Id.* at PAGEID # 116.)

With these allegations, Plaintiff has alleged potentially viable claims for medical deliberate indifference and retaliation. First, as set forth in the Initial Screen, a claim for medical

---

[2] Plaintiff attached his grievance correspondence with NCI personnel to the Complaint. (*See* ECF No. 1-1 at PAGEID ## 19-22.) Plaintiff did not attach the correspondence to the Amended Complaint, but the Undersigned liberally construes it as attached to the Amended Complaint. *Brown v. Howell*, No. 2:21-CV-128, 2022 WL 2114945, at *3 (W.D. Mich. June 13, 2022) ("The Sixth Circuit has concluded that '[i]f . . . the party submitting the pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading, some or all of the original pleading can be incorporated in the amended pleading.' Accordingly, the Court will liberally construe Plaintiff's amended complaint to incorporate his initial complaint with exhibits.") (quoting *Clark v. Johnston*, 413 F. App'x 804, 811–12 (6th Cir. 2011)).

5

deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained as follows:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011). Where the risk of serious harm is obvious, it can be inferred that the defendants had knowledge of the risk. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). Along similar lines, "[o]rdinary medical malpractice does not satisfy the subjective component." *Grose v. Corr. Med. Servs, Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). Rather, the Sixth Circuit considers the subjective component to be satisfied where defendants recklessly disregard a substantial risk to a plaintiff's health. *Parsons v. Caruso*, 491 F. App'x 597, 603 (6th Cir. 2012). Furthermore, "a difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim." *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002) (citing cases).

6

In the Initial Screen, the Undersigned found that Plaintiff had arguably satisfied the objective component of a medical deliberate indifference claim by alleging the symptoms of Acahalasia, noting that courts "have looked favorably on such allegations." (ECF No. 6 at PAGEID # 71 (citations omitted).) This remains true. The Undersigned also previously found, however, that Plaintiff had not satisfied the subjective component of a medical deliberate indifference claim because he had not alleged that any Defendant had the "sufficiently culpable state of mind." (*Id.* (citations omitted).) This no longer remains true, as Plaintiff now alleges that Dr. Capers knew of Plaintiff's sufficiently serious medical need and improperly chose not to treat it for economic – not medical – reasons. (ECF No. 12 at PAGEID # 114.) This allegation satisfies, for purposes of the initial screen, the subjective component of Plaintiff's medical deliberate indifference claim.

Regarding Plaintiff's retaliation claim, "[p]risoners have a First Amendment right to file grievances and access the courts without suffering retaliation for so doing." *Rodgers v. Hawley*, 14 F. App'x 403, 409–10 (6th Cir. 2001). A retaliation claim entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The first of these elements is satisfied here, as filing a lawsuit against a prison official clearly qualifies as protected conduct. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) ("[P]rotected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights claims.").

As to the second element, Plaintiff alleges that "Dr. Capers ordered [Plaintiff] to get put into medical isolation, confined to a cell separated from the rest of the population without freedom of movement for nearly a week." (ECF No. 12 at PAGEID # 115.) This constitutes an adverse action for purposes of Plaintiff's claim. *Treesh v. Bobb-Itt*, No. 2:10-CV-211, 2011 WL 3837099, at *7 (S.D. Ohio Aug. 29, 2011) ("As to the second element, placing an inmate in isolation for any length of time constitutes an adverse action.") (citing *Hill v. Lappin,* 630 F.3d 468, 474 (6th Cir. 2010). Finally, Plaintiff alleges that Dr. Capers acted immediately after learning that she was named in this lawsuit, so the Undersigned finds that Plaintiff has sufficiently pled that a causal connection existed between Plaintiff filing the subject lawsuit and the allegedly adverse action. *Bates v. Dyer*, No. 1:23-CV-16, 2023 WL 4073577, at *4 (S.D. Ohio June 12, 2023) ("The Sixth Circuit has held that temporal proximity between protected conduct and retaliatory acts may create an inference of retaliatory motive.") (citing cases). Accordingly, it is **RECOMMENDED** that the Plaintiff be **PERMITTED** to proceed on his claims against Dr. Capers.

**B.     Mrs. Wiley.**

The Amended Complaint also asserts a retaliation claim against a new Defendant, a Corrections Officer at NCI identified as "Mrs. Wiley." (ECF No. 12 at PAGEID ## 115, 117.) Specifically, Plaintiff alleges that "[t]hrough the months" after he filed the subject lawsuit, from September 24, 2021 until "as late as March 2022," Mrs. Wiley, "who is not a medical professional, made Food Services remove [Plaintiff's] medical Therapeutic Diet without cause and harassed [Plaintiff], creating further issues with his medical situation" because "[d]ue to malnutrition, on several occasions, [Plaintiff] experienced light-headedness and dizziness that

caused him to pass out and hit his head on different objects." (*Id.* at PAGEID # 115.) Plaintiff alleges that Mrs. Wiley did so in her individual capacity. (*Id.* at PAGEID # 117.)

Liberally construing Plaintiff's Amended Complaint, the Court finds that these retaliation allegations also are sufficient for purposes of surviving the initial screen.[3] First, again, Plaintiff's lawsuit qualifies as protected conduct. *Bell*, 308 F.3d at 607. Second, Plaintiff's allegation that Mrs. Wiley withheld Plaintiff's medical diet without cause also has been found to constitute an adverse action. *Jackson v. Gordon*, No. 3:03-CV-1725, 2014 WL 690643, at *7 (M.D. Pa. Feb. 24, 2014) ("The suspension of [Plaintiff's] non-standard therapeutic diet arguably constitutes adverse action.") (citing *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003) (finding alleged denial of high fiber diet and delaying medical appointment sufficient to support retaliation claim); *Davidson v. Chestnut,* 193 F.3d 144, 149 (2d Cir.1999) (observing that denial of kosher diet is an adverse action that may support retaliation claim)); *see also, e.g.*, *Quezada v. Roy*, No. 14-cv-4056, 2017 WL 6887793, at *10 (S.D.N.Y. Dec. 14, 2017) (finding, at summary judgment, that "removing Plaintiff from his therapeutic diet plan constitutes an adverse action for purposes of a First Amendment retaliation claim"); *Davis*, 320 F.3d at 353 (finding, at pleading stage, that the plaintiff adequately alleged adverse action based on deprivation of "high fiber diet"). Finally, liberally construing the Amended Complaint, Plaintiff has established a timeline from which the Undersigned can plausibly infer that a causal connection existed between Plaintiff's filing of the subject lawsuit and Mrs. Wiley's allegedly adverse action, especially given Plaintiff's allegation that Mrs. Wiley is not a medical professional (and therefore would not have been making a medical judgment about Plaintiff's diet). *Bates*, 2023 WL 4073577, at

---

[3] To be clear, the Undersigned takes no position as to the merits of any of Plaintiff's claims.

*4.  Accordingly, it is **RECOMMENDED** that the Plaintiff be **PERMITTED** to proceed on his claims against Mrs. Wiley.

    **C.**        **Other Defendants.**

        **1.**        **Other Individual Defendants.**

Plaintiff also asserts claims against two other individual Defendants: Jay Forshey, the Warden of NCI; and Dr. Eddy, the "Collegial Review Head Administrator" who "was the Medical Director responsible for overseeing this medical situation." (ECF No. 12.) Specifically, Plaintiff alleges that Warden Forshey "side[d] with Dr. Capers in not treating [Plaintiff], contributing to deliberate indifference," and that "[a]s Dr. Capers' supervisor, Dr. Eddy acted in an individual capacity with medical deliberate indifference [by] allowing Dr. Capers to act with such conduct and not assuring [Plaintiff] received proper medical care." (*Id.* at PAGEID ## 116-117.) But these conclusory allegations fail to state claims against Warden Forshey or Dr. Eddy, because "to hold a supervisor liable . . . a plaintiff 'must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct[.]'" *Mann v. Ohio Dep't of Rehab. & Corr.*, No. 2:18-CV-01565, 2019 WL 2617471, at *5 (S.D. Ohio June 26, 2019), *report and recommendation adopted sub nom. Mann v. Ohio Dep't of Rehabilitationand Corr.*, No. 2:18-CV-1565, 2019 WL 3334328 (S.D. Ohio July 24, 2019) (quoting *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009)).

But the Amended Complaint fails to include any such specific allegations to this end. Instead, Plaintiff merely alleges that Warden Forshey "side[d] with Dr. Capers" and that Dr. Eddy "allow[ed] Dr. Capers to act." (ECF No. 12 at PAGEID ## 116-117.) These conclusory allegations are insufficient. *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) ("[I]n the context of a civil rights claim, . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim.") (citing *Lillard v. Shelby County Bd. of Educ.*,76 F.3d 716, 726 (6th Cir. 1987)); *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 520 (6th Cir.

11

2006) (observing that "the court is not required to create a claim for the plaintiff[ ]") (internal quotation marks and citation omitted); *Cline v. Rogers*, 87 F.3d 176, 184 (6th Cir. 1996) (instructing courts not to suppose a plaintiff would be able to show facts not alleged or that a defendant has violated the law in ways not alleged). Accordingly, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's claims against Defendants Warden Forshey and Dr. Eddy.

### 2. Other Defendants.

Finally, Plaintiff asserts the following allegations against Defendants OCHC, NCI, and the ODRC:

- "[T]he OCHC, through some custom or standard, acted with medical deliberate indifference by not assuring [Plaintiff] received proper medical care and for allowing Dr. Capers to violate their own rules or practices";

- "[NCI] acted with deliberate indifference by not assuring [Plaintiff] received proper medical care and for allowing Dr. Capers, C/O Mrs. Wiley, and Warden Forshey to commit such conduct through some custom or standard"; and

- "The ODRC acted with deliberate indifference by not assuring [Plaintiff] received proper medical care and for allowing Dr. Capers, Dr. Eddy, the OCHC, C/O Mrs. Wiley, Warden Forshey, and NCI to commit such conduct through some custom or standard."

(ECF No. 12 at PAGEID # 117.) Of note, Plaintiff does not include any other allegations against these Defendants.

These claims are insufficient. First, Plaintiff's allegations are again just conclusory. Plaintiff summarily alleges that these Defendants "acted with medical deliberate indifference by not assuring [Plaintiff] received proper medical care," providing no specific allegations to support these claims. (*Id.*) Further, to the extent Plaintiff believes that various rules, practices,

customs, or standards were violated, Plaintiff fails to identify them (let alone describe how they were violated). (*Id.*) Plaintiff has therefore failed to establish how these three Defendants could be liable. *Lyons v. Heyd*, No. 1:12-CV-324, 2015 WL 892375, at *4 (S.D. Ohio Mar. 3, 2015) ("[T]he plaintiff must show] that the unconstitutional policy or custom existed, that the policy or custom was connected to the governmental entity, and that the policy or custom caused the constitutional violation.") (internal quotation marks and citations omitted). Further, to the extent Plaintiff claims that these entities are culpable for merely "allow[ing]" the individual Defendants to act how they did, those claims fail. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it must be based on active unconstitutional behavior.") (internal quotation marks and citations omitted). Accordingly, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's claims against Defendants OCHC, NCI, and the ODRC in their entirety.

**D.  Relief Sought.**

In the Initial Screen, the Court noted that "even if Plaintiff had stated a claim for medical deliberate indifference claim, Plaintiff has failed to seek appropriate relief" because "to the extent Plaintiff's claims are against Defendants in their official capacities, Plaintiff is not permitted to recover compensatory or punitive damages." (ECF No. 6 at PAGEID # 72 (citation omitted).) While this still rings true, it appears Plaintiff has sought appropriate compensatory damages because his claims against Defendants Dr. Capers and Mrs. Wiley are only in their individual capacity. (*See* ECF No. 12.) On a similar note, the Court also previously noted that "Plaintiff's transfer from NCI to CCI renders his claims for injunctive relief moot." (ECF No. 6 at PAGEID # 72 (citation omitted).) This also appears to no longer be an issue, however, as

Plaintiff does not seek any injunctive relief against Defendants Dr. Capers or Mrs. Wiley. (*See* ECF No. 12.)

Separately, however, Plaintiff also requests that the Court issue some rather extraordinary injunctive relief:

> In addition, enforce statutory provision to empower a state medical examining board to temporarily suspend the Physicians' Licenses to practice medicine until a Formal Adjudicatory Procedure Hearing can be conducted to officially revoke or terminate Physicians' Licenses.
>
> As well as, empower the Ohio Peace Officer Training Commission to temporarily suspend the correctional officer's Ohio Peace Officer Training Certificate until a Notice of Charges and Intent to Suspend or Revoke License may be issued by the Review Commission so that no further harm can be done to any other persons.

(ECF No. 12 at PAGEID # 118.) The Court does not, however, have the authority to either: (a) force a state medical examining board to temporarily suspend licenses to practice medicine; or (b) suspend prison employees. *See* Ohio Rev. Code § 4731.22 (Establishing procedures for medical disciplinary actions); *Covington v. Hamblen Cnty. Jail*, No. 2:20-CV-104-TAV-CRW, 2020 WL 3273026, at *3 (E.D. Tenn. June 17, 2020) ("[T]he Court does not make decisions regarding the employment of Defendants, as such action would "unnecessarily intrude[ ] on [the prison's] operations" and would constitute "an inappropriate use of the court's equity powers.") (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1543 (11th Cir. 1993) (citations omitted)). Accordingly, these requests for injunctive relief are improper.

### III.

For all of these reasons, it is **RECOMMENDED** that Plaintiff be **PERMITTED** to pursue his claims against Defendants Dr. Tina Capers and Mrs. Wiley, but that the remainder of Plaintiffs' claims be **DISMISSED** in their entirety pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim for which relief can be granted.

14

**PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**Date: March 18, 2024**              */s/ Elizabeth A. Preston Deavers*
                                      **ELIZABETH A. PRESTON DEAVERS**
                                      **UNITED STATES MAGISTRATE JUDGE**