IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRET S. MERRICK,**

    **Plaintiff,**

v.

    Civil Action 2:21-cv-4803
    Judge Edmund A. Sargus, Jr.
    Magistrate Judge Elizabeth P. Deavers

**WARDEN NOBLE CORRECTIONAL INSTITUTION,** *et al.***,**

    **Defendants.**

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Strike Doc. 57 (ECF No. 58); Plaintiff's Motion for Leave to Compel Discovery and Motion for Leave to Request Summary Judgment (ECF No. 59); and Defendants' Motion to Stay (ECF No. 60).

Defendants move the Court to strike Plaintiff's Response (ECF No. 57) to their Reply in support of their Motion for Summary Judgment. (ECF No. 58.)  The Defendants' Motion (ECF No. 58) is **GRANTED**.  Plaintiff's Response (ECF No. 57) violates Southern District of Ohio Local Rule 7.2.[1]  The Court **STRIKES** ECF No. 57.

Plaintiff filed a Motion for Leave to Compel Discovery and Motion for Leave to Request Summary Judgment on April 16, 2025.  (ECF No. 59.)  The discovery period ended on February 14, 2025, and dispositive motions were due by February 28, 2025.  (ECF No. 43.)  Plaintiff fails to demonstrate good cause as to why the Court should permit Plaintiff to conduct discovery

---

[1] S.D. Ohio Civ. R. 7.2(a)(2):  "No additional memoranda beyond those enumerated [memorandum in opposition and reply memorandum] are permitted except upon leave of court for good cause shown."

months after the deadline; nor does Plaintiff explain why he failed to seek an extension of the discovery deadline before it passed. Plaintiff similarly fails to demonstrate good cause as to why the Court should permit Plaintiff to file an untimely Motion for Summary Judgment. Accordingly, Plaintiff's Motion (ECF No. 59) is **DENIED**.[2]

Defendants filed a Motion to Stay. (ECF No. 60.) The Court **DENIES** the Motion (ECF No. 60) **as moot**.

## REPORT AND RECOMMENDATION

This matter is also before the Undersigned for a Report and Recommendation on Defendants' Motion for Summary Judgment. (Mot., ECF No. 51.) Plaintiff filed a Response. (Resp., ECF No. 55.) Defendants filed a Reply. (Reply, ECF No. 56.) This matter is ripe for judicial review. For the following reasons, the Undersigned **RECOMMENDS** that the Court **GRANT** Defendants' Motion and award summary judgment in Defendants' favor on all of Plaintiff's claims.

### I. BACKGROUND

Plaintiff, Bret Merrick, currently incarcerated in the Chillicothe Correctional Institution ("CCI"), proceeding *pro se* and *informa pauperis*, brings this action under 42 U.S.C. § 1983.[3] (Am. Compl., ECF No. 12.) Plaintiff is proceeding with his Eighth Amendment deliberate indifference and First Amendment retaliation claims against Defendant Capers and his First Amendment retaliation claim against Defendant Wiley. (ECF Nos. 13, 25.) The Undersigned will briefly summarize Plaintiff's allegations but incorporates the factual allegations set forth in the Initial Screen as if fully set forth herein. (*See* ECF No. 6, at PageID 67–68.) Plaintiff alleges

---

[2] The Motions contained within Plaintiff's Motion (ECF No. 59) are **DENIED as moot**.
[3] Plaintiff does not explicitly claim he brings his suit pursuant to Section 1983. Based on his allegations, the Undersigned construes his suit as brought pursuant to Section 1983.

that from March 2020 to April 2021, Defendant Capers acted with deliberate indifference towards his (then-undiagnosed) achalasia symptoms. (Am. Compl. at PageID 114; ECF No. 1-1,[4] at PageID 21–22.) Plaintiff asserts that Defendant Capers retaliated against him for filing this lawsuit by causing him to be placed in medical isolation. (Am. Compl. at PageID 115.) Plaintiff contends that from September 24, 2021, to March 2022, Defendant Wiley retaliated against him for filing this lawsuit by interfering with his medical diet.

The following facts, taken from Plaintiff's Amended Complaint, appear to be undisputed. While Plaintiff was incarcerated at Noble Correctional Institution ("NCI"), he sought medical care for a condition subsequently diagnosed as achalasia. (Am. Compl. at PageID 114; Mot. at PageID 309; ECF No. 51-1.) Defendant Capers, a Certified Nurse Practitioner, was one individual who treated Plaintiff. (Am. Compl. at PageID 114; Mot. at PageID 313; ECF No. 51-1.) Defendant Wiley, a Correctional Officer, worked at NCI during the same period in which Plaintiff was incarcerated. (Am. Compl. at PageID 117; Mot. at PageID 317.)

The Undersigned summarizes Plaintiff's nearly four-hundred pages of medical records here, undisputed as explained below, and will discuss them in further detail as necessary throughout the Report and Recommendation. On May 18, 2020, Plaintiff submitted a Health Services Request ("HSR") complaining of pain in his chest every time he ate. (ECF No. 51-1, at PageID 714.) On May 23, 2020, a nurse examined Plaintiff and referred him to an Advanced Level Provider ("ALP") to address his difficultly with swallowing. (*Id.* at PageID 715–18.) On June 1, 2020, Defendant Capers examined Plaintiff, prescribed a treatment plan, scheduled a follow-up appointment, referred him to a dietician, and instructed him to notify staff if his

---

[4] The Undersigned liberally construed Plaintiff's Exhibits to his Complaint as attached to his Amended Complaint. (ECF No. 13, at PageID 137.)

3

symptoms worsened. (*Id.* at PageID 710–12.) On June 5, 2020, Plaintiff received a chest x-ray. (*Id.* at PageID 707.)

On June 15, 2020, a diet technician examined Plaintiff and prescribed a treatment plan. (*Id.* at PageID 705–06.) On July 11, 2020, a nurse examined Plaintiff in response to his complaint that his pain while eating recently increased and his request for a follow-up with a doctor. (*Id.* at PageID 701–03.) The nurse provided a few recommendations and reminded Plaintiff that he had a follow-up appointment already scheduled. (*Id.* at PageID 702.) On July 14, 2020, Defendant Capers conducted the follow-up appointment with Plaintiff, prescribed a treatment plan, scheduled a follow-up appointment, and requested a barium-swallow test. (*Id.* at PageID 697–700.) From July 14, 2020, to March 9, 2021, medical staff, including Defendant Capers, examined Plaintiff nine times. (*Id.* at PageID 648–696.) Within that timeframe, medical staff provided recommendations to address Plaintiff's symptoms while waiting for the barium-swallow test, including compliance with the treatment plans, and prescribed a mechanical soft food diet, followed by a pureed diet. (*Id.*)

On March 9, 2021, an outside provider performed the barium-swallow test on Plaintiff and noted that the results indicated a diagnosis of achalasia. (*Id.* at PageID 645–49.) On March 11, 2021, Defendant Capers met with Plaintiff to discuss the barium-swallow test results and possible treatment options. (*Id.* at PageID 641–44.) Defendant Capers indicated that she would discuss Plaintiff's case with non-party Dr. Clark and follow up with Plaintiff in one week. (*Id.* at PageID 643.) From March 29, 2021, to June 24, 2021, medical staff, including Defendant Capers, examined Plaintiff five times. (*Id.* at PageID 619–40.) These visits included regular follow-up appointments with diet technicians and reminders of the importance of complying with the treatment and diet plan. (*Id.*)

On June 28, 2021, an outside provider performed an endoscopy on Plaintiff.  (*Id.* at PageID 617–18.)  Based on those results, Defendant Capers placed a request for an esophageal manometry.  (*Id.* at PageID 615.)  On July 8, 2021, Dr. Clark met with Plaintiff to discuss the results of his endoscopy and prescribed a treatment plan until further testing could be scheduled.  (*Id.* at PageID 602–03.)  On August 3, 2021, nurses examined Plaintiff twice regarding his complaints.  (*Id.* at PageID 595–99.)  On August 20, 2021, Dr. Clark examined Plaintiff to address his worsening symptoms.  (*Id.* at PageID 592–93.)  Dr. Clark noted that Plaintiff's manometry was scheduled for January 22, 2022, but he would try to move the appointment up or schedule another procedure, and prescribed another treatment plan.  (*Id.* at PageID 592.)  From August 30, 2021, to October 25, 2021, medical staff examined Plaintiff five times.  (*Id.* at PageID 587–71.)  These visits included regular follow-up appointments with diet technicians and reminders of the importance of complying with the treatment and diet plan.  (*Id.*)

On January 18, 2022, an outside provider conducted a manometry on Plaintiff.  (*Id.* at PageID 566.)  On January 25, 2022, Defendant Capers met with Plaintiff to discuss the results of his manometry test and informed him that she would place a request for a referral to a specialist.  (*Id.* at PageID 554–56.)  Defendant Capers also recommended a treatment plan.  (*Id.*)  From February 12, 2022, to March 1, 2022, medical staff examined Plaintiff seven times.  (*Id.* at PageID 521–53.)  The exams were often in response to his complaints of dizziness, passing out, and seizures and also included diet technician follow up appointments and reminders of the importance of following the treatment and diet plan.  (*Id.*)

On March 4, 2022, Plaintiff submitted an HSR in which he complained that the new medication was not working, and he would try a two-day overnight observation.  (*Id.* at PageID 516–17.)  On March 8, 2022, a nurse examined Plaintiff in response to his HSR submission and

5

referred him to an ALP. (*Id.* at PageID 512–15.) On March 10, 2022, Defendant Capers examined Plaintiff. (*Id.* at PageID 505–11.) Plaintiff reported vomiting at least ten times a day, and Defendant Capers submitted an order for Plaintiff to be admitted to the infirmary for observation. (*Id.*) From March 10, 2022, to the morning of March 16, 2022, Plaintiff remained in the infirmary for observation. (*Id.* at PageID 396–504.) During this period, medical staff examined Plaintiff multiple times and routinely conducted safety checks on him. (*Id.*) Medical staff also ordered several tests, including another x-ray. (*Id.*)

Plaintiff's discharge summary included a request for a surgery consultation. (*Id.*) On March 28, 2022, Plaintiff met with an outside medical provider for a surgery consultation. (*Id.* at PageID 382–84.) On March 30, 2022, Plaintiff met with Defendant Capers to discuss the recent consultation, and she submitted a request for a specialist. (*Id.* at PageID 378–81.) Plaintiff's surgery was scheduled for April 25, 2022. (*Id.* at PageID 376.) On April 19, 2022, CCI noted Plaintiff's transfer from NCI to CCI. (*Id.* at PageID 374.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001)); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317–324 (1986)); *see also* Fed. R. Civ. P. 56(c)(a)(A) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (citations and quotations omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III. ANALYSIS

Defendants move for summary judgment on all of Plaintiff's claims. In support, they rely upon Plaintiff's verified medical records, conduct history report, and Defendant Wiley's Responses to Interrogatories. (ECF Nos. 51-1, 51-2, 51-3.) For the following reasons, the Undersigned concludes that Plaintiff fails to raise any genuine issue of material fact; therefore, summary judgment should be granted in favor of Defendants on all of Plaintiff's claims.

Plaintiff alleges that Defendant Capers violated his First and Eighth Amendment rights and Defendant Wiley violated his First Amendment rights. (ECF No. 12, at PageID 114–15;

7

ECF No. 13 (construing his claims as such).) 42 U.S.C. § 1983 allows a plaintiff to seek redress from state actors for "the deprivation of any rights, privileges, or immunities secured by the Constitution." *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a cause of action under § 1983, a plaintiff must allege "(1) [a] deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted). The Undersigned addresses each alleged violation below.[5]

### A. Eighth Amendment Deliberate Indifference Claim – Defendant Capers

Plaintiff fails to demonstrate any genuine issue of material fact regarding Defendant Capers' alleged deliberate indifference to Plaintiff's serious medical need. It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his or her] serious medical needs." *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010) (quotations and citation omitted). "A deliberate indifference claim has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (citation omitted). The United States Court of Appeals for the Sixth Circuit has explained as follows:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)]. The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious

---

[5] As explained in Section III.A–C, Plaintiff fails to demonstrate a genuine issue of material fact for each of his constitutional claims. Accordingly, the Undersigned need not discuss whether the alleged violations were "caused by a person acting under color of state law." *Hunt*, 542 F.3d at 534 (citation omitted).

> harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011). The Sixth Circuit has also noted in the context of deliberate indifference claims:

> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). Along similar lines, "[o]rdinary medical malpractice does not satisfy the subjective component." *Grose v. Corr. Med. Servs, Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). Rather, the Sixth Circuit considers the subjective component to be satisfied where a defendant recklessly disregards a substantial risk to a plaintiff's health. *Parsons v. Caruso*, 491 F. App'x 597, 603 (6th Cir. 2012).

In moving for summary judgment, Defendant Capers challenges both the objective and subjective elements of Plaintiff's Eighth Amendment deliberate indifference claim. Defendant Capers contends that the record demonstrates Plaintiff disagreed with his medical treatment, not that Defendant Capers was deliberately indifferent. (Mot. at PageID 314.) In support of her argument, Defendant Capers provides numerous examples from Plaintiff's verified medical records wherein Plaintiff received consistent medical care, including from Defendant Capers. (*Id.* at PageID 313–16; Reply, at PageID 813–15.)

In his Response, Plaintiff does not address Defendant Capers' argument that he fails to meet the objective element. Instead, he argues that Defendants "neglect to recognize critical elements within the facts of the case that caused injury which led to the filing of the complaint." (Resp. at PageID 745.) While not clear, it appears that Plaintiff takes issue with Defendant

9

Capers referencing her actions on March 31, 2022, regarding her signature on a test form for an outside medical appointment, as opposed to discussing his treatment in the years prior. (*Id.*; Mot. at PageID 313.) Plaintiff then contends that he did not receive proper medical treatment. (Resp. at PageID 745.)

In reply, Defendant Capers addresses Plaintiff's issue by referencing seventeen instances of care provided to Plaintiff from June 1, 2020, to January 25, 2022, thirteen of which involved Defendant Capers, supported with citations to his medical records. (Reply, at PageID 813–14.) Defendant Capers also notes Plaintiff's failure to provide any evidentiary materials and reiterates her arguments that Plaintiff cannot satisfy the objective or subjective elements of his deliberate indifference claim. (*Id.* at PageID 815–19.) As explained below, the Undersigned agrees that Plaintiff has failed to raise any genuine issue of fact regarding Defendant Capers' deliberate indifference to his serious medical need.

As set forth above, the deliberate-indifference test has both objective and subjective parts. In *Phillips v. Tangilag*, the Sixth Circuit addressed the objective element at length in a manner particularly relevant here. 14 F.4th 524, 534–35 (6th Cir. 2021). In doing so, the court determined that an inmate could not "rely on his serious medical needs alone to establish the objective element of his deliberate-indifference claim" where the "undisputed evidence" showed that he "received extensive care." *Phillips*, 14 F.4th at 536 (citation omitted). Rather, the Sixth Circuit held that, because the plaintiff's claim "challenge[d] the adequacy of this undisputed care, he must show that the doctors provided grossly incompetent treatment." *Id.* The court explained its reasoning in this way:

> To prove this objectively serious harm in the health context, prisoners must first establish that they have "serious medical needs." *Estelle* [*v. Gamble*], 429 U.S. [97] at 106, 97 S. Ct. 285 [(1976)]. They can do so, for example, by showing that a doctor has diagnosed

> a condition as requiring treatment or that the prisoner has an obvious problem that any layperson would agree necessitates care. *See Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013). A serious medical need alone can satisfy this objective element if doctors effectively provide no care for it. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).
>
> More frequently, doctors provide some care and prisoners challenge their treatment choices as inadequate. To establish the objective element in this common situation, prisoners must show more. *See Anthony v. Swanson*, 701 F. App'x 460, 463–64 (6th Cir. 2017); *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013). Objectively speaking, this care qualifies as "cruel and unusual" only if it is "so grossly incompetent" or so grossly "inadequate" as to "shock the conscience" or "be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (quoting *Miller v. Calhoun County*, 408 F.3d 803, 819 (6th Cir. 2005)). Ordinary individuals outside a prison's walls and inmates within those walls both face a risk that their doctors will perform incompetently. . . . But mere malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106, 97 S.Ct. 285. Only grossly or woefully inadequate care—not just care that falls below a professional standard—can be called "cruel and unusual." *See Rhinehart*, 894 F.3d at 737; *Jones v. Muskegon County*, 625 F.3d 935, 945–46 (6th Cir. 2010); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021); *Hoffer v. Sec'y, Fla. Dep't of Corrs.*, 973 F.3d 1263, 1271 (11th Cir. 2020). . . .
>
> For prisoners to prove grossly inadequate care, . . . courts generally require them to introduce medical evidence, typically in the form of expert testimony. *See Rhinehart*, 894 F.3d at 737, 740–43; *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

*Phillips,* 14 F.4th 524, 534–35.

Because the inmate plaintiff in *Phillips* had failed to introduce "expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so," the Sixth Circuit found that his claim of deliberate indifference could not "get past the objective stage." *Phillips,* 14 F.4th. at 536–37 (citation omitted). Likewise, Plaintiff's deliberate indifference claim here fails under the *Phillip* standards.

While the parties do not dispute that Plaintiff's achalasia is a serious medical condition, Plaintiff cannot rely on it alone to establish the objective element of his deliberate-indifference

11

claim. *Phillips*, 14 F.4th at 536 (citing *Anthony*, 701 F. App'x at 463–64). This is so because Plaintiff objects to the adequacy of the treatment he received, not to an utter lack of treatment, throughout his Complaint and Response. For example, Plaintiff contends he filed a grievance after an appointment with Defendant Capers. During that appointment, they discussed the results of a diagnostic test Plaintiff received regarding his issues with swallowing and retaining food. (Resp. at PageID 745, citing to ECF No. 51-1, at PageID 643.) Plaintiff admits that he was "advised of barium swallow results and possible treatment options." (*Id.*) Plaintiff further contends he did not receive "proper medical treatment," but he does not provide any medical evidence to support that claim. (Resp. at PageID 745.) Additionally, Plaintiff's medical records, which he does not dispute[6] and occasionally cites to, demonstrate that he received consistent care from Defendant Capers and other medical staff. Accordingly, Plaintiff's deliberate indifference claim unquestionably challenges the **adequacy** of the medical care he received.

Therefore, as *Phillips* instructs, the relevant "question for the objective component is not whether defendants were incompetent or even committed medical malpractice in the care they provided, but whether [plaintiff] presented 'expert medical evidence' raising a material factual question that the extensive medical care he received was 'so grossly incompetent or so grossly inadequate as to shock the conscience or be intolerable to fundamental fairness.'" *Ashley v. Boayue*, No. 19-CV-10484, 2021 WL 5911212, at *8 (E.D. Mich. Nov. 22, 2021) (quoting *Phillips*, 14 F.4th at 535, 537), *report and recommendation adopted*, No. 19-CV-10484, 2021 WL 5907927 (E.D. Mich. Dec. 14, 2021), *aff'd in part, vacated in part, remanded*, No. 22-1295, 2023 WL 2910533 (6th Cir. Jan. 10, 2023); *see also Phillips*, 14 F.4th at 535 ("In this case, . . .

---

[6] Plaintiff does not address, much less dispute, the accuracy or validity of his medical records. The Undersigned considers them as undisputed. *See* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

[plaintiff] received substantial care and challenges the medical judgments of medical professionals. Our cases require expert testimony for this [] type of challenge.").

Upon a detailed review of the record, the Undersigned finds that Plaintiff cannot "get past the objective stage" of his deliberate indifference claim "because he lacks any expert medical evidence showing that he received ***grossly inadequate care***" for his achalasia. *Ashley*, 2021 WL 5911212, at *8 (emphasis in original) (quoting *Philips*, at 536). At best, the only medical evidence Plaintiff relies on in support of his claim that had he received "proper medical treatment," he would not have been at risk for injury is his own medical records:

> If Merrick would have received proper medical treatment he would not have been **"risk for injury r/t neuro concerns"** where he had *several instances of passing out and he had fallen hitting his head on a metal locker box* and experienced **"seizure activity"** on February 12, 2022 (emphasis added) (see EAS-EPD Doc#: 51-1 PAGEID #s: 523 - 553).

(Resp. at PageID 745–46 (emphasis in original).) A review of the medical records upon which Plaintiff relies does not demonstrate that he received grossly inadequate or incompetent care. (ECF No. 51-1, at PageID 523–53.) Instead, the instances of passing out, hitting his head, and seizure activity are all self-reported by Plaintiff, or other inmates. Plaintiff fails to provide an expert medical opinion that these incidents were caused by grossly inadequate or incompetent care. (*Id.*) Absent expert medical evidence describing what a competent doctor would have done to treat Plaintiff's achalasia and why Defendant Capers' course of treatment was grossly incompetent, Plaintiff has failed to raise a genuine issue of material fact sufficient to survive summary judgment.

For these reasons, Defendant Capers is entitled to summary judgment as to Plaintiff's deliberate indifference claim against her. At most, Plaintiff has demonstrated a disagreement with the treatment he has received. This simply is not enough. "An inmate's 'disagreement with

13

the testing and treatment he has received . . . does not rise to the level of an Eighth Amendment violation.'" *Rhinehart,* 894 F.3d at 740 (quoting *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008)). "Nor does 'a desire for additional or different treatment . . . suffice to support an Eighth Amendment claim.'" *Id.* (citing *Anthony*, 701 F. App'x at 464). Again, Plaintiff must present evidence from which a reasonable jury could find that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. (citations omitted.) Plaintiff has failed to do so. Because the Undersigned finds that Plaintiff failed to meet the objective component of his deliberate indifference claim, the Court need not consider the subjective component. *Phillips*, 14 F.4th at 535 ("Only if a prisoner proves this objective element must courts consider the second (subjective) part of the deliberate-indifference test."). The Undersigned **RECOMMENDS** that summary judgment be **GRANTED** in favor of Defendant Capers on Plaintiff's deliberate indifference claim against her.

### B. First Amendment Retaliation Claim – Defendant Wiley

Plaintiff fails to demonstrate any genuine issue of material fact regarding Defendant Wiley's alleged retaliation against Plaintiff. In order to prove a First Amendment retaliation claim, Plaintiff must establish each of the following elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.[7]

---

[7] The Undersigned notes that the first element—protected conduct—is not at issue. (Mot. at PageID 318.)

*Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 2000)).

As to the adverse action element, the Court of Appeals for the Sixth Circuit has held that "not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter a person of ordinary firmness from engaging in protected activities." *Reynolds–Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). Courts recognize that "since there is no justification for harassing people for exercising their constitutional rights [the effect on freedom of speech] need not be great in order to be actionable." *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (quoting *Thaddeus-X*, 175 F.3d at 397). "Nevertheless, since § 1983 is a tort statute, we must be careful to ensure that real injury is involved, lest we trivialize the First Amendment by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred." *Id.* (citation and quotation omitted).

Regarding causation, "[b]ecause the question is whether the adverse action was taken (at least in part) because of the protected conduct, the causation inquiry centers on the defendant's motive." *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (citing *Thaddeus-X*, 175 F.3d at 394).

As an initial matter, the Undersigned notes that the only allegations relevant to Plaintiff's retaliation claim against Defendant Wiley are as follows:

- "Mrs. Wiley, who is not a medical professional, made Food Services remove Merrick's medical Therapeutic Diet without cause and harassed Merrick, creating further issues with his medical situation." (ECF No. 12, at PageID 115.)
- "Mrs. Wiley acted in an individual capacity . . . by . . . committing . . . retaliation while affecting Merrick's medical situation." (*Id.* at PageID 117.)

Defendant Wiley, however, argues that "Plaintiff was not engaged in protected conduct at times when his cell was searched" and "Plaintiff's conviction for prison rules infraction 'checkmates'

15

his current retaliation claim and is terminal to his action." (Mot. at PageID 317.) In response, Plaintiff raises for the first time additional factual allegations against Defendant Wiley. (Resp. at PageID 747–48.) Plaintiff alleges that he filed a grievance wherein he complained that "a female officer from [his] dorm" instructed Food Services to prevent him from bringing items back to his dorm; he filed an informal complaint against Defendant Wiley; and that he filed another grievance wherein he accused Defendant Wiley of fabricating an incident and report and stealing and destroying his personal property. (*Id.* at PageID 748.)

The Undersigned will not consider claims or allegations related to these purported cell searches, complaints, and grievances as they are raised for the first time at summary judgment. *See Heard v. Landfair*, No. 20-11680, 2023 WL 2541320, at *1 (E.D. Mich. Mar. 16, 2023) (affirming decision to not consider the allegation raised for first time in summary judgment motion), *aff'd*, No. 23-1277, 2024 WL 1252399 (6th Cir. Jan. 2, 2024); *Guiffre v. Loc. Lodge No. 1124, United Steelworkers of Am.*, 940 F.2d 660 (Table), 1991 WL 135576 at *5 (6th Cir. 1991) ("A party may not rely on wholly new allegations of wrongdoing to resist a motion for summary judgment.") (citation omitted).

Accordingly, Defendant Wiley's remaining argument in her Motion challenges the second and third elements of Plaintiff's retaliation claim against her based on her alleged interference with his medical diet. (Mot. at PageID 317–18.) Defendant Wiley contends that Plaintiff cannot "show specific facts that would demonstrate that an adverse action was taken against him that would 'deter a person of ordinary firmness from continuing to engage in that conduct.'" (*Id.* at PageID 318.) In support, Defendant Wiley relies upon her Responses to Interrogatories to demonstrate that she "has no authority to amend diets of inmates." (*Id.* at PageID 317.) Defendant Wiley's answer to "Did you contact Food Services to tell them to stop

16

permitting Merrick from his taking his medical Therapeutic Diet meals back to the housing unit?" was "I did not." (ECF No. 51-2 (as in original).) Plaintiff responds by reiterating his allegations in his Complaint and citing to Audit Grievances wherein he complains that "I was told that a female officer from my dorm told them not to give me anything to take back to the dorm" and "Office Wiley fabricated an incident and report that never happened in order to convince Food Services to alter my Medical Diet." (Resp. at PageID 748 (emphasis omitted), citing to ECF No. 51-1, at PageID 762, 765.)

The Undersigned finds that Plaintiff fails to raise a genuine issue of material fact sufficient to survive summary judgment. "When a motion for summary judgment is properly supported under Rule 56, such as the [d]fendants' motion, the [plaintiff] may not merely rest on the allegations contained in the complaint, but must respond with affirmative evidence supporting [his] claims and establishing the existence of a genuine issue of material fact . . . ." *Carder v. Lamb*, No. 1:21-00074, 2022 WL 2353116, at *3 (M.D. Tenn. May 4, 2022), *report and recommendation adopted*, No. 1:21-CV-00074, 2022 WL 2349144 (M.D. Tenn. June 29, 2022).

Plaintiff's grievances do not constitute affirmative evidence. "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations and citation omitted). *See also Burley v. Quiroga*, No. 16-CV-10712, 2019 WL 4316499, at *8 (E.D. Mich. June 6, 2019) ("Without more, self-serving affidavits are insufficient to sustain a motion for summary judgment.") (quotations and citation omitted), *report and recommendation adopted*, No. 16-CV-10712, 2019 WL 3334810 (E.D. Mich. July 25, 2019).

17

The Undersigned affords Plaintiff all reasonable inferences and construes the evidence in the light most favorable to him. Plaintiff, however, "has offered nothing" to rebut Defendant Wiley's evidence "other than bare denials and [his] subjective beliefs," both of which are insufficient to survive summary judgment. *Coulter v. Deloitte Consulting, L.L.C.*, 79 F. App'x 864, 868 (6th Cir. 2003). Accordingly, Plaintiff fails to provide any evidence to establish "the existence of a genuine issue of material fact." *Carder*, 2022 WL 2353116, at *3. The Undersigned **RECOMMENDS** that the Court **GRANT** summary judgment in favor of Defendant Wiley on Plaintiff's retaliation claim against her.

### C.     First Amendment Retaliation Claim – Defendant Capers

Plaintiff fails to demonstrate any genuine issue of material fact regarding Defendant Capers' alleged retaliation against him.[8] Plaintiff alleges that on March 10, 2022, he informed Defendant Capers that "he filed a lawsuit and named her in the claim." (ECF No. 12, at PageID 115.) Plaintiff asserts that Defendant Capers immediately ordered him into medical isolation, "confined to a cell separated from the rest of the population without freedom of movement for nearly a week." (*Id.*) Defendant Capers moves for summary judgment on this claim, contending that she did not take an adverse action against Plaintiff and relying on his medical records in support. (Mot. at PageID 318.) Plaintiff responds by reiterating that Defendant Capers "restricted [his] freedom of movement without his consent." (Resp. at PageID 747.) In support of this allegation, Plaintiff cites to a portion of his medical records: "'inmate wants to be released from infirmary [sic] but I will keep him back here for at least one more day to continue monitoring intakes and outputs.'" (*Id.* at PageID 744–45, citing ECF No. 51-1, at PageID 454.)

---

[8] The Undersigned notes that the first element—protected conduct—again is not at issue. (Mot. at PageID 318.)

Defendant Capers' reply reiterates that she did not take an adverse action against Plaintiff because she did not order Plaintiff into medical isolation. (Reply, at PageID 811–12.) In support, Defendant Capers cites to Plaintiff's medical records and notes that on March 14, 2022, non-party Nurse Practitioner ("NP") Neff ordered Plaintiff to remain in observation when Plaintiff wanted to be released. (*Id.*)

After a review of Plaintiff's medical records, particularly the report that Plaintiff relies upon for evidence of Defendant Capers' adverse action, the Undersigned concludes that Plaintiff fails to demonstrate a genuine issue of material fact. NP Neff, not Defendant Capers, kept Plaintiff in medical observation without Plaintiff's consent. (ECF No. 51-1, at PageID 453–55.) Plaintiff fails to dispute his medical record demonstrating that NP Neff kept him in observation, not Defendant Capers, or provide any evidence that could raise a genuine issue of material fact. The Undersigned finds no evidence that Defendant Capers took an adverse action against Plaintiff. Again, Plaintiff "has offered nothing" to rebut Defendant Capers' evidence "other than bare denials and [his] subjective beliefs," both of which are insufficient to survive summary judgment. *Coulter*, 79 F. App'x at 868. Accordingly, the Undersigned **RECOMMENDS** that summary judgment be **GRANTED** in favor of Defendant Capers on Plaintiff's retaliation claim against her.[9]

---

[9] The Undersigned need not reach Defendants' arguments for qualified immunity because the Undersigned finds no constitutional violation. *See Monaco v. Doe*, No. 2:22-CV-2888, 2024 WL 3273450, at *16 (S.D. Ohio July 2, 2024) ("The Court need not address whether any of the [d]efendants are entitled to qualified immunity because the record shows there is no genuine dispute of material fact as to whether these [d]efendants violated plaintiff's [constitutional] rights"), *report and recommendation adopted sub nom. Monaco v. Doe (1)*, No. 2:22-CV-2888, 2024 WL 3912385 (S.D. Ohio Aug. 22, 2024).

19

## IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that the Court **GRANT** Defendants' Motion for Summary Judgment in its entirety.[10]

### PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within **14 DAYS**, file and serve on all parties its objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within **14 DAYS** after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**IT IS SO ORDERED.**

**Date: August 18, 2025**                                   **/s/ *Elizabeth A. Preston Deavers*
                                                            ELIZABETH A. PRESTON DEAVERS
                                                            UNITED STATES MAGISTRATE JUDGE**

---

[10] Plaintiff's Response to Defendants' Motion includes a request for the Court to compel discovery. (Resp. at PageID 742–43.) This request is **DENIED** for the same reasons Plaintiff's other discovery motions are denied.

20