**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**BRET S. MERRICK,**
**Plaintiff,**

**v.**

**WARDEN NOBLE CORRECTIONAL INSTITUTION, *et al.*,**
**Defendants.**

**Case Number 2:21-cv-4803**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge S. Courter M. Shimeall**

**OPINION AND ORDER**

This matter is before the Court on an Order and Report and Recommendation issued by the Magistrate Judge (ECF No. 63), which recommended granting Defendants' Motion for Summary Judgment (ECF No. 51). Plaintiff filed an Objection to the Report and Recommendation (ECF No. 67), and Defendants responded (ECF No. 68). For the following reasons, the Court **OVERRULES** Plaintiff's Objection to the Order and Report and Recommendation and **ADOPTS AND AFFIRMS** the Order and Report and Recommendation.

**BACKGROUND**

Plaintiff Bret S. Merrick, proceeding *pro se* and *in forma pauperis*, is an Ohio inmate who was previously incarcerated at the Noble Correctional Institution ("NCI"). (ECF No. 12.) He filed this action against multiple defendants for violations of his First Amendment and Eighth Amendment rights under 42 U.S.C. § 1983. (ECF Nos. 12, 13, 25.) Following an initial screening by the Magistrate Judge, this Court adopted the Magistrate Judge's Report and Recommendation, dismissing all of Plaintiff's claims except the medical deliberate indifference and retaliation claims against Defendant Tina Capers and the retaliation claim against Defendant Kimberly Wiley. (ECF No. 25, PageID 183–84.) In these claims, Plaintiff alleges that Defendant Capers acted with deliberate indifference toward his then-undiagnosed symptoms and retaliated

against him for filing this lawsuit by ordering him to be placed in medical isolation. (ECF No. 12, PageID 114–15.) He also alleges that Defendant Wiley retaliated against him by making Food Services remove his medical therapeutic diet. (*Id.* PageID 115.)

In March 2020, Plaintiff alleges that he informed prison officials and medical professionals at NCI that he had difficulty swallowing his food without choking or vomiting. (*Id.* PageID 114.) Plaintiff was ultimately diagnosed with a condition called achalasia. (ECF No. 51-1, PageID 645.) The Magistrate Judge's Report and Recommendation summarized nearly four hundred pages of Plaintiff's medical records:

> On May 18, 2020, Plaintiff submitted a Health Services Request ("HSR") complaining of pain in his chest every time he ate. (ECF No. 51-1, at PageID 714.) On May 23, 2020, a nurse examined Plaintiff and referred him to an Advanced Level Provider ("ALP") to address his difficultly with swallowing. (*Id.* at PageID 715–18.) On June 1, 2020, Defendant Capers examined Plaintiff, prescribed a treatment plan, scheduled a follow-up appointment, referred him to a dietician, and instructed him to notify staff if his symptoms worsened. (*Id.* at PageID 710–12.) On June 5, 2020, Plaintiff received a chest x-ray. (*Id.* at PageID 707.)
>
> On June 15, 2020, a diet technician examined Plaintiff and prescribed a treatment plan. (*Id.* at PageID 705–06.) On July 11, 2020, a nurse examined Plaintiff in response to his complaint that his pain while eating recently increased and his request for a follow-up with a doctor. (*Id.* at PageID 701–03.) The nurse provided a few recommendations and reminded Plaintiff that he had a follow-up appointment already scheduled. (*Id.* at PageID 702.) On July 14, 2020, Defendant Capers conducted the follow-up appointment with Plaintiff, prescribed a treatment plan, scheduled a follow-up appointment, and requested a barium-swallow test. (*Id.* at PageID 697–700.) From July 14, 2020, to March 9, 2021, medical staff, including Defendant Capers, examined Plaintiff nine times. (*Id.* at PageID 648–696.) Within that timeframe, medical staff provided recommendations to address Plaintiff's symptoms while waiting for the barium-swallow test, including compliance with the treatment plans, and prescribed a mechanical soft food diet, followed by a pureed diet. (*Id.*)
>
> On March 9, 2021, an outside provider performed the barium-swallow test on Plaintiff and noted that the results indicated a diagnosis of achalasia. (*Id.* at PageID 645–49.) On March 11, 2021, Defendant Capers met with Plaintiff to discuss the barium-swallow test results and possible treatment options. (*Id.* at PageID 641–44.) Defendant Capers indicated that she would discuss Plaintiff's case with non-party Dr. Clark and follow up with Plaintiff in one week. (*Id.* at PageID 643.) From March 29, 2021, to June 24, 2021, medical staff, including Defendant Capers, examined Plaintiff five times. (*Id.* at PageID 619–40.) These

visits included regular follow-up appointments with diet technicians and reminders of the importance of complying with the treatment and diet plan. (*Id.*)

On June 28, 2021, an outside provider performed an endoscopy on Plaintiff. (*Id.* at PageID 617–18.) Based on those results, Defendant Capers placed a request for an esophageal manometry. (*Id.* at PageID 615.) On July 8, 2021, Dr. Clark met with Plaintiff to discuss the results of his endoscopy and prescribed a treatment plan until further testing could be scheduled. (*Id.* at PageID 602–03.) On August 3, 2021, nurses examined Plaintiff twice regarding his complaints. (*Id.* at PageID 595–99.) On August 20, 2021, Dr. Clark examined Plaintiff to address his worsening symptoms. (*Id.* at PageID 592–93.) Dr. Clark noted that Plaintiff's manometry was scheduled for January 22, 2022, but he would try to move the appointment up or schedule another procedure, and prescribed another treatment plan. (*Id.* at PageID 592.) From August 30, 2021, to October 25, 2021, medical staff examined Plaintiff five times. (*Id.* at PageID 587–71.) These visits included regular follow-up appointments with diet technicians and reminders of the importance of complying with the treatment and diet plan. (*Id.*)

On January 18, 2022, an outside provider conducted a manometry on Plaintiff. (*Id.* at PageID 566.) On January 25, 2022, Defendant Capers met with Plaintiff to discuss the results of his manometry test and informed him that she would place a request for a referral to a specialist. (*Id.* at PageID 554–56.) Defendant Capers also recommended a treatment plan. (*Id.*) From February 12, 2022, to March 1, 2022, medical staff examined Plaintiff seven times. (*Id.* at PageID 521–53.) The exams were often in response to his complaints of dizziness, passing out, and seizures and also included diet technician follow up appointments and reminders of the importance of following the treatment and diet plan. (*Id.*)

On March 4, 2022, Plaintiff submitted an HSR in which he complained that the new medication was not working, and he would try a two-day overnight observation. (*Id.* at PageID 516–17.) On March 8, 2022, a nurse examined Plaintiff in response to his HSR submission and referred him to an ALP. (*Id.* at PageID 512–15.) On March 10, 2022, Defendant Capers examined Plaintiff. (*Id.* at PageID 505–11.) Plaintiff reported vomiting at least ten times a day, and Defendant Capers submitted an order for Plaintiff to be admitted to the infirmary for observation. (*Id.*) From March 10, 2022, to the morning of March 16, 2022, Plaintiff remained in the infirmary for observation. (*Id.* at PageID 396–504.) During this period, medical staff examined Plaintiff multiple times and routinely conducted safety checks on him. (*Id.*) Medical staff also ordered several tests, including another x-ray. (*Id.*)

Plaintiff's discharge summary included a request for a surgery consultation. (*Id.*) On March 28, 2022, Plaintiff met with an outside medical provider for a surgery consultation. (*Id.* at PageID 382–84.) On March 30, 2022, Plaintiff met with Defendant Capers to discuss the recent consultation, and she submitted a request for a specialist. (*Id.* at PageID 378–81.) Plaintiff's surgery was scheduled for April 25, 2022. (*Id.* at PageID 376.) On April 19, 2022, CCI noted Plaintiff's transfer from NCI to CCI [Chillicothe Correctional Institution]. (*Id.* at PageID 374.)

(ECF No. 63, PageID 907–10.)

After discovery ended in this lawsuit, Defendants Capers and Wiley moved for summary judgment on Plaintiff's claims. (ECF No. 51.) Plaintiff filed a response in opposition (ECF No. 55), and Defendants replied (ECF No. 56). The Magistrate Judge issued an Order and Report and Recommendation, which recommended granting summary judgment on Defendants' Motion. (ECF No. 63.) Plaintiff objected to the Order and Report and Recommendation (ECF No. 67), and Defendants responded (ECF No. 68).

**DISCOVERY AND MOTION FOR LEAVE TO FILE SUMMARY JUDGMENT**

Under Rule 72, if a party objects to a magistrate judge's nondispositive pretrial order, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies to the magistrate judge's factual findings, and the "contrary to law" standard applies to the magistrate judge's legal conclusions. *K.W. v. Red Roof Inns, Inc.*, 836 F. Supp. 3d 759, 768 (S.D. Ohio 2026) (Marbley, J.). "A factual finding is clearly erroneous when the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" *Boddy v. Grech*, 178 F.4th 264, 275 (6th Cir. 2026) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citation omitted).

Plaintiff first objects to the Magistrate Judge's grant of Defendants' Motion to Strike his Response to Defendants' Reply. (ECF No. 67.) Plaintiff asserts that Defendants asked to strike this document because Plaintiff made a claim of civil conspiracy. (*Id.* PageID 962–63.) Plaintiff also cites Federal Rule of Civil Procedure 15(a)(2) ("The court should freely give leave when justice so requires") and Rule 15(d) (supplemental pleading) to argue that he should have been

able to file this response. (*Id.*) These arguments do not persuade. Plaintiff's Response was stricken because it violated the Local Rules of this Court, which prohibit "additional memoranda beyond those enumerated except upon leave of court for good cause shown." S.D. Ohio Local Rule 7.2(a)(2). Plaintiff responded to Defendants' Reply without seeking leave of court and without showing good cause. The Magistrate Judge properly granted Defendants' Motion to Strike and did not act contrary to law.

Plaintiff also objects to the Magistrate Judge's denial of his Motion for Leave to Compel Discovery and Motion for Leave to Request Summary Judgment. Plaintiff points to requests he filed with the Court during the discovery period and notes that he was "directed not to file such requests until after the discovery phase deadlines." (ECF No. 67, PageID 952.) Plaintiff misunderstands what the Court asked him to do. While the Court did direct Plaintiff to "cease filing" such documents, it also directed him "to serve counsel for Defendants all requests for discovery." (ECF No. 45, PageID 291; *see also* ECF No. 50, PageID 302.) During this time, Plaintiff filed a Request for Expert Assistance on November 18, 2024 (ECF No. 48), which the Magistrate Judge denied, construing it as a motion to appoint counsel and explaining that appointment of counsel in a civil case is not a constitutional right and that "exceptional circumstances" for such an appointment did not exist in this case (ECF No. 49).

As Plaintiff then notes in his Motion for Leave to Compel Discovery, he served discovery requests on Defendants' counsel, and Defendants responded to requests for admission, interrogatories, and requests for production of documents in December 2024 and January 2025. (ECF No. 59, PageID 843.) Defendants filed their Motion for Summary Judgment on February 14, 2025, the day discovery closed. (ECF No. 51.) Plaintiff responded in opposition on February 26, two days before dispositive motions were due, but did not submit his own summary judgment motion. (ECF No. 55.) In that response, he asked the Court to compel discovery

because he believed Defendants had withheld documents. (*Id.* PageID 742.) Defendants replied on March 10 (ECF No. 56), and Plaintiff attempted to respond again on March 24 (ECF No. 57, stricken per ECF No. 63).

Plaintiff asserts that he did not receive the documents he had requested until April 1, 2025, after the close of discovery. (ECF No. 59, PageID 844.) At that time, he "received 450 pages of medical records, 162 pages of November 2021, December 2021, and January 2022 Unit Logs and Shakedown Logs, Standard of Employee Conduct Certificate of Kimberley Wiley, and Grievances requested." (*Id.*) Plaintiff filed his Motion for Leave to Compel Discovery and Motion for Leave to Request Summary Judgment approximately two weeks later. (*Id.*) In his Objection to the Magistrate Judge's order denying these Motions, Plaintiff explains that he "had to wait until the discovery process was over to confirm whether Defense would provide evidence accordingly" and that "by correcting the discovery issues, a motion for summary judgment would give [Plaintiff] the ability [to] present the claim in a clean and clear manner." (ECF No. 67, PageID 952.)

Pretrial schedules "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In evaluating whether good cause exists, "diligence is key." *Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 459 (S.D. Ohio 2021) (Morrison, J.). And "while pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues," they do not receive "any special consideration when they fail to adhere to readily-comprehended court deadlines." *Ward v. Am. Pizza Co.*, 279 F.R.D. 451, 458 (S.D. Ohio 2012) (quoting *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991)). There is no question that Plaintiff missed the deadline to submit his own dispositive motion. The Magistrate Judge's decision to deny Plaintiff's Motion to Compel Discovery and Motion for Leave to Request Summary Judgment hinges on Plaintiff's failure to demonstrate good cause or even explain to the Court why he did not seek an extension

before the discovery deadline passed. (ECF No. 63, PageID 906.) The Magistrate Judge's determinations are entitled to "considerable deference" under Federal Rule of Procedure 72(a), *K.W.*, 836 F. Supp. 3d at 768, and this Court does not find them clearly erroneous. In any event, as explained below, Plaintiff has not demonstrated any genuine issue of material fact that would allow his claims to survive summary judgment.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. Standard of Review for Objections to a Report and Recommendation

If a party timely objects to a report and recommendation, the Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). General objections are not enough; the objecting party "must identify each issue . . . to which they object with sufficient clarity, or else that issue is forfeited." *Price v. Ohio Dep't of Rehab. & Corr.*, 649 F. Supp. 3d 598, 604 (S.D. Ohio 2023) (Cole, J.) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). "Merely restating arguments previously presented, merely stating a disagreement with a magistrate judge's suggested resolution, or simply summarizing what has been presented before" does not suffice. *Brock v. Hamilton Cnty. JFS Children Servs.*, No. 1:25-cv-685, 2026 WL 1361481, at *1 (S.D. Ohio May 15, 2026) (Cole, J.) (quoting *Wischer ex rel. Ernst v. Comm'r of Soc. Sec.*, No. 1:13-cv-810, 2015 WL 1107543, at *1 (S.D. Ohio Mar. 11, 2015)).

## II. Standard of Review for a Summary Judgment Motion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "The moving party

bears the burden of showing that no genuine issues of material fact exist." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627 (6th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "In determining 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law,' the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party." *Jordan v. Howard*, 987 F.3d 537, 542 (6th Cir. 2021) (citing *Anderson*, 477 U.S. at 251–55). "A factual issue is genuinely in dispute if a reasonable factfinder could resolve it either way." *Id.* at 542 (citing *Anderson*, 477 U.S. 242).

## III. Plaintiff's § 1983 Claims

A claim under 42 U.S.C. § 1983 requires a plaintiff to "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (citation omitted). The Magistrate Judge recommended granting Defendants' Motion for Summary Judgment on all remaining claims, which alleged violations of § 1983 under the Eighth Amendment for deliberate indifference (as to Defendant Capers) and the First Amendment for retaliation (as to both Defendant Capers and Defendant Wiley). This Court addresses each in turn.

### A. Deliberate Indifference—Defendant Capers

"A government official violates an incarcerated person's Eighth Amendment rights when the official shows 'deliberate indifference to serious medical needs.'" *Murray v. Dep't of Corr.*, 29 F.4th 779, 786 (6th Cir. 2022) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A deliberate indifference claim has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (citation omitted). For the objective component, a

plaintiff must show that "the medical need at issue is sufficiently serious," and for the subjective component, that "prison officials have a sufficiently culpable state of mind in denying medical care." *Id.* (citations omitted).

Courts "distinguish between cases where the complaint alleges a complete denial of medical care" and allegations "that a prisoner received inadequate medical treatment." *Id.* (citation omitted). In the latter situation, "federal courts are generally reluctant to second guess medical judgments," unless medical treatment is "so woefully inadequate as to amount to no treatment at all." *Id.* (citations omitted). But "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Grose v. Corr. Med. Servs., Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

In challenging Plaintiff's Eighth Amendment claim, Defendant Capers first points to multiple instances in Plaintiff's medical record showing she or others provided medical care to him over a period of more than 18 months. (ECF No. 51, PageID 313–16; ECF No. 56, PageID 813–15.) Where "undisputed evidence" shows "extensive care," the Sixth Circuit has explained that an inmate "cannot rely on his serious medical needs alone" to satisfy the objective element of a deliberate indifference claim but must instead show "grossly inadequate care," typically through expert medical testimony. *Phillips v. Tangilag*, 14 F.4th 524, 536 (6th Cir. 2021). Plaintiff provides no such evidence. As the Magistrate Judge reasoned, Plaintiff's arguments to the Court concern the inadequacy of his treatment. (ECF No. 63, PageID 916.) In his Objection, Plaintiff cites repeatedly to his own medical records and discusses a visit with a surgical specialist, being advised of "possible treatment options," and being given literature, all while contending that "a medical visit does not constitute as medical care or treatment." (ECF No. 67,

PageID 953–56.) Without expert medical evidence, Plaintiff does not raise a genuine issue of material fact on the objective component of his deliberate indifference claim, so the Court does not need to consider the subjective component, or, in turn, whether Defendant Capers acted under color of state law. *Phillips*, 14 F.4th at 535. As the Magistrate Judge correctly noted, Plaintiff's "disagreement" with his treatment is not evidence that would allow a reasonable jury to find that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." (ECF No. 63 (citation omitted).) As a result, Plaintiff's Eighth Amendment claim does not survive summary judgment.

**B. Retaliation—Defendant Capers**

For a First Amendment retaliation claim, a plaintiff must show that "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Berkshire v. Dahl*, 928 F.3d 520, 531 (6th Cir. 2019) (citation omitted).

The Magistrate Judge reasoned that there was no protected conduct at issue, based on Plaintiff's allegations that Defendant Capers kept him in medical isolation. (ECF No. 63, PageID 922, n.8). Plaintiff's Objection clarifies that he was alleging "Defendant Capers put [him] in a medical observation isolation due to the fact that he named Capers in a lawsuit." (ECF No. 67, PageID 961).) "[I]nmates have a well-established constitutional right to access the courts, based in part on the First Amendment," although this right "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (collecting cases). In light of Plaintiff's Objection, this Court concludes that Plaintiff did engage in protected conduct by filing a lawsuit. But Plaintiff still fails to allege an adverse action that is connected to his protected conduct. While Plaintiff claims that Defendant Capers

"restricted [his] freedom of movement without his consent" as a result of the lawsuit he filed (ECF No. 67, PageID 961), Defendant Capers cites Plaintiff's medical records to show that a nonparty nurse practitioner ordered Plaintiff to remain in observation when Plaintiff wanted to be released. (ECF No. 63, PageID 923 (citing ECF No. 56, PageID 811–12).) Plaintiff does not address this in his Objection. To show a causal connection between his protected conduct (filing a lawsuit that named Defendant Capers) and an adverse action (restricting his freedom of movement by placing him in medical isolation), Plaintiff would have to allege that Defendant Capers took this action against him as a result of his protected conduct. Here, Plaintiff only shows that another individual (not Defendant Capers) ordered him to remain in observation, and he presents no evidence that this individual was directed by Defendant Capers. Because Plaintiff cannot show an adverse action by Defendant Capers or a causal connection to his protected conduct, his First Amendment retaliation claim against Defendant Capers fails to survive summary judgment.

### C. Retaliation—Defendant Wiley

As explained above, Plaintiff must establish three elements for a First Amendment retaliation claim: that he engaged in protected conduct, that an adverse action was taken against him, and that the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Berkshire*, 927 F.3d at 531.

The Magistrate Judge noted that Plaintiff raised new allegations against Defendant Wiley for the first time at the summary judgment stage. (ECF No. 63, PageID 920). While these allegations do involve protected conduct—namely, Plaintiff filing grievances against Defendant Wiley—these claims and allegations cannot be raised for the first time at this stage. *See Antero Res. Corp. v. Tejas Tubular Prods., Inc.*, 610 F. Supp. 3d 1047, 1059 (S.D. Ohio 2022) ("A party may not rely on wholly new allegations of wrongdoing to resist a motion for summary

judgment." (quoting *Guiffre v. Local Lodge No. 1124, United Steelworkers of America*, 940 F.2d 660 (6th Cir. 1991) (unpublished table decision))).

Plaintiff alleged in his Amended Complaint that Defendant Wiley "made Food Services remove [Plaintiff's] medical Therapeutic Diet without cause and harassed [Plaintiff], creating further issues with his medical condition." (ECF No. 12, PageID 115.) While Plaintiff's claims against Defendant Wiley survived an initial screen by the Magistrate Judge (*see* ECF No. 13, PageID 141–43), Plaintiff needed more to survive summary judgment after Defendant Wiley said that she had "no authority to amend diets of inmates" and asserted that she did not tell Food Services to stop giving Plaintiff his Therapeutic Diet meals. (ECF No. 63, PageID 920–921.) As the Magistrate Judge noted, Plaintiff did not rebut this evidence but instead offered only "bare denials" and his "subjective beliefs." (*Id.* PageID 922). Because Plaintiff has not provided affirmative evidence to establish a genuine issue of material fact, summary judgment in favor of Defendant Wiley is proper.

**D. Qualified Immunity**

Finally, Plaintiff objects to the Magistrate Judge's conclusion that Defendants' qualified immunity arguments need not be reached. (ECF No. 67, PageID 963–65.) In deciding whether Defendants are entitled to qualified immunity, courts look at "whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and if so . . . whether that right was clearly established." *Claggett v. Wenzler*, 397 F. Supp. 3d 1054, 1072 (S.D. Ohio 2019) (Rice, J.) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Plaintiffs have the burden of showing that defendants are not entitled to qualified immunity. *Hopkins v. Nichols*, 37 F.4th 1110, 1114 (6th Cir. 2022). Because Plaintiff does not set forth any new facts in his Objection to support his claims of a constitutional violation, his qualified immunity arguments are not well taken. *See id.*

## CONCLUSION

For the reasons stated above, the Court **OVERRULES** (ECF No. 67) Plaintiff Bret S. Merrick's Objection; **ADOPTS AND AFFIRMS** (ECF No. 63) the Magistrate Judge's Order and Report and Recommendation; and **GRANTS** (ECF No. 51) Defendants Tina Capers and Kimberly Wiley's Motion for Summary Judgment.

The Clerk is **DIRECTED** to enter judgment and terminate this case on the Court's docket.

**IT IS SO ORDERED.**

**11/16/2026**
**DATE**

**s/Edmund A. Sargus, Jr.**
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**